015-2073, same two parties, Arendi v. Apple, but I think we have a different counsel. Mr. Asher, please proceed. The question for the court today is whether it will open the door for the Patent and Trial and Appeal Board to invalidate patent claims without evidence. Well, heck no. That's easy. Let's all just go home. Exactly. I'm happy to do that, Your Honor. Whether the board and the petitioner will be allowed to rely on hindsight-laden words, common sense, to fill in a missing limitation in the prior art. The board gave no rational explanation for why, when performing an add-to-address book, the subroutine impounded would search for duplicate telephone numbers. To the contrary, the board merely states we find it reasonable to presume. KSR specifically refers to reference to common sense, does it not? KSR does. Okay, so the Supreme Court's telling us that in the obviousness inquiry, common sense is a factor that we're to consider, correct? Common sense is a factor with respect to KSR and how it was distinguished in KS Hemp versus Herewhere. The common sense of one ordinary skill in the art at the time is relevant to coming up with how one would combine references. Okay, so is it your position that as a matter of law, that the use of the common sense inquiry in the obviousness analysis is limited to use in connection with considering whether there's a motivation to combine, as opposed to determining whether or not a limitation that's absent in the prior art could be found? I believe that's good law under the Herewhere decision. Yes, Your Honor. Well, if that's the case, then that's the end of the inquiry on their use of common sense, because they didn't use it with respect to motivation to combine. That would be. If you apply Herewhere to this case, I think that's the end of it, yes. Okay, what if we disagree and believe that the common sense applies to both aspects of the inquiry? So if common sense were to apply, you have to have evidence of this common sense. You need testimony that can be challenged and that can be presented to the court and stand up as evidence. And in this case, we have a situation where rather than common sense, you have the board asserting an irrational suggestion. So in their first reasoning, they go to the paper address book. So they look at a paper address book, but that's irrelevant to this claim. One using a paper address book would not laboriously flip through it looking for telephone numbers. The claim search of step I of the claim requires using at least part of the first information as a search term. And with respect to the embodiment of PANDIT being asserted against the 843 patent, the first information is the telephone number. Dr. Menace, am I saying his name right? Menache. Menache. Oh, I like Menace better. Dr. Menache, didn't he testify that it would be common sense to look for people by name? And that's not even what's claimed, right? What this claim is going to is looking by telephone number. But wasn't Dr. Menache's testimony that it would be common sense maybe to search by name? Correct. Dr. Menache made some general statement. Because that's what the board relied on. To the extent that the board thought there was evidence to support what they did, isn't one of your arguments that that evidence actually cannot be found to be the substantial evidence? Correct. That cannot be the substantial evidence. These are helpful questions. I appreciate it. And to help further, this is very similar to what happened in the case of active video networks versus Verizon at 694-F1312. Where the court said this testimony is generic and bears no relation to any specific combination of prior art elements. And that's all you have here. He made some general statement. He concluded it having to do with avoiding the same address. And so you don't have any evidence that is particular to the issue here. Even more than it just being different. Because somebody might say, well, Dr. Menache said it would be common sense before you create a new phone number for someone in your contact to look to see if you already have an existing phone number for that person by looking by name. I'm testifying more than he did. But that's the most that can be said about what he said. Right? And isn't it true that since the claim focuses on searching by the first information, which is actually the phone number and not the name, that that would be the common sense idea breaks down because you could have lots of repetition of phone numbers. My husband works at a big law firm. I actually happen to have three former clerks who work there now. They all have the same phone number. So, right? And that's one logical reason not. By phone number, I'd actually pull up four entries in my contact book. Yeah. There are a number of reasons why it's irrational to support this notion of a search, which is not found in PANDIT at all, by having a telephone number. Another reason is in PANDIT you're adding to an address book. You have a telephone number. Yeah, but Apple would argue or does argue that what Dr. Menasche was really emphasizing is that when you do the search, the point is to determine if there are duplicate entries. Right. So, you have a telephone number and you want to enter it in your address book. Somebody needs one of your entries needs this phone number. So, you do the add to address book. The computer does the search. It doesn't find your entry because it needs the telephone number. So, you give it the name and the name goes with the telephone number. It gets entered into your address book. Well, what if that entry had a different telephone number? Now, you've got a duplicate entry for this person. But does the claim say anything other than add to address book? It doesn't say and make sure you don't have any duplicate entries? I'm sorry. Add to address book has nothing to do with our claim. Add to address book is pandit. And our claim has to do with being able to search in an external source from the first program. And so, they're just trying to shoehorn pandit into our claim by imagining a search when you're doing an add to address book with a telephone number. And they're saying you would avoid a duplicate entry when, in fact, you would not avoid duplicate entries in many situations. The search just makes no sense. So, you're arguing basically that pandit just simply teaches adding a telephone number to an address book. It doesn't teach the extra step of doing a search. That's correct. Now, the argument on the other side is that, well, it was well known at that time that in some databases, if you wanted, you could automatically do a search before you added a name. That some databases, by default, would automatically search to avoid duplicate entries while you're adding. Correct? So, that sort of search deals with the entry identifier, when you say the name. We're talking about data contents, right? Your argument is that it was common that in certain databases, and I think even your own expert stated that some databases, by default, would automatically check for duplicate entries. Some didn't. To the extent that they would, it would probably be when there's an entry identifier, and you might look for the entry identifier. Like with a paper address book, you're entering a name. Maybe you would check that section of your address book. When you did that telephone number search, which is of no value because it didn't find the entry and you entered a duplicate, one could have also done a search for the name and found the entry and avoided the issue. But here, the information that's being asserted against our claim is this telephone number, and in that instance, it's just data content, and it's not rational to conduct or imagine this search in Pandit. Well, the board said there would be a benefit whenever you add something to an address book to avoid duplicate entries, and that in and of itself is the motivation to combine what is arguably common and old elements, namely searching for duplicates. That might be true for an entry identifier, but here, it's not true for the telephone number. They say it could be a benefit. They say it would be common sense, and they say it's reasonable to presume, but they don't have an underlying rationale that I understand for there to be a benefit. So you're arguing they don't have a teaching for the extra step of searching for duplicates whenever you add a telephone number? No, Your Honor, there's not. And we didn't have an opportunity to depose the board or anything on this presumption that it came up with in its decision. All we have was the general statement from the Apple's expert. Do you want to save your remaining time for rebuttal, or do you have anything further? I can save. Thank you. Okay. Thank you, Mr. Asher. Mr. Matsui. Thank you, Your Honor. May it please the Court. The board's decision to cancel a claim so the 843 patent should be affirmed. Substantial evidence supports the board's decision. The issue on appeal is whether a person of ordinary skill of the art would have seen a benefit to including the known methods of database searching to Pandit's add-to-address book example. Now, I think it's important to go back and look at what Pandit actually is disclosing here. Let's back up, because I want to get to the legal principle here with respect to the use of common sense. It's one thing to say that, well, common sense would say that those of skill in the art would be motivated to combine two pieces of prior art. What you're asking us to do is to use common sense to basically substitute for something that's absent in the prior art. Isn't that right? No. No, Your Honor. We're not doing that. I think it's important to distinguish between two distinct concepts. One is common sense, which is the motivation to modify or to combine, and the other is common knowledge. The common knowledge of a person of ordinary skill in the art. And that's what the board was relying upon here when it was looking to modify Pandit. It was relying on the common knowledge of database searching. But it didn't really say that, did it? It said it would be its common sense to do this search. No, Your Honor. I think if we start at A12 of the board's opinion, and this is going to continue on to A13, but it says the obviousness inquiry not only permits but requires consideration of common knowledge and common sense. And then if we skip down to the next paragraph or next paragraph on page A13, it says, in this case, a claim structural feature is not missing from the applied prior art. The conclusion of obviousness follows from a benefit that readily would have been apparent to one of skill in the art at the time of the invention. That benefit is provided by the mere retrieval and display of useful preexisting information to a user, information in a database, using known methods. And then if we look at the next paragraph, the board specifically cites and relies upon patent owner's expert admits that some database programs conduct a search for duplicates by default. So the board right here is relying upon what's the general knowledge of the art, that people of ordinary skill in the art understood databases and databases searching. Dr. Menesha, our expert, explained that A168 and A170. But this patent claim is not about searching for duplicates. Your Honor. The fact that their expert said that searching for duplicates is known isn't the same as what this claim is directed to. This claim is directed to searching for a particular kind of information, which is the first information, which in this case is a phone number. And it doesn't care if there are duplicates. No, Your Honor. I think if we actually look at the claims and the specification of the 843 patent. I'm looking at the claim. It's very clear that it's searching for duplicates. Now, let's go to A74 and claim one at column 63. I just have the claim, so just tell me what. At line 63, causing a search for a search term in the information source using a second computer program in order to find second information related to the search term. So what it's doing is it's taking the first information. It's talking about duplicates. It is a duplicate, Your Honor. Because what it's doing is it's taking the first information, which might be a name, and it's taking that name as a search term. The first information in this is the phone number, right? Isn't that what's disclosed as the first information here? The first information, I think, would be in the 843 patent would be a name. Such as you would find someone's name, and then you would – it could be multiple things, but a name is the example they mainly use in the 843 patent. And so what that does is it identifies a name. It searches for that name in an external database, and then it retrieves information if it finds the duplicate of the name that's related to the name. In other words, if you think about an address book, it basically takes my name, Brian Matsui. It searches for Brian Matsui in the address book, and then it pulls up my address, my telephone number, my email. That's what the claim is doing. But it searches your name, and then it pulls up your address. Yes, Your Honor. So it doesn't necessarily look for duplicates. It does, Your Honor, because it says right there in the claim that it's searching for the duplicate. Where does it say searching for the duplicate? Where does it say right there in the claim that it's searching for the duplicate? It's causing a search for the search term in the information source. That's your name. Yes. In order to find second information, that's your address. Yes. Once it finds the duplicate, then it retrieves the second information. What duplicate? Once it finds – I'm sorry. What duplicate looks for your name to get your phone number? Yes, Your Honor. But the way that it does that is it uses a search term that's the first information. The first information is my name. That's in the document. And it uses my name to search as the search term in the external information source, in the external database. If it finds my name, which would be a duplicate, it would be my name, Brian Matsui, in the original document, my name, Brian Matsui, in the database. Then it retrieves second information. That's just simple database searching. That's what Dr. Menasche is explaining that a database search does. And so at A170, Dr. Menasche explains that databases are a structured way to store information that can be accessible in a variety of different ways. Let me direct you to Dr. Menasche's declaration. This is at A207. Yes, Your Honor. Paragraph 99. Yes. He says it would also have been obvious to a person of ordinary skill in the art at the relevant time frame that the first step in adding to an address book is searching the address book to determine if an entry already exists. Where in PANDIT does it say that the first step is to search for duplicates? So PANDIT itself does not say that, but this is a situation where there is a motive. Thank you for giving me at least a direct answer on that. Go ahead. Right. So PANDIT does not disclose searching in the add to address book example. The board recognized that, but there was a known method of database searching. But so what? I mean, every invention where the inventive, the invention claimed is a combination of things, is a combination of old things that are old and well-known. But in the absence of hindsight, nobody knows to combine them except for the inventor. Yes, Your Honor, but there is a motivation here. There's a common sense reason that somebody would want to search for a duplicate before adding in a duplicate telephone number into the address book. Now, I think that one of the things that we've been discussing a lot is PANDIT in the context of telephone numbers. And I think it's important to note that PANDIT is not limited to telephone numbers. To PANDIT, the example in 1F, figure 1F in PANDIT, which is at A145, where it has this telephone number, this 202 telephone number, PANDIT discloses that that's not the only type of text that can be recognized. What PANDIT explains is that entry of, and the board made a finding on this, entry of a telephone number, however, as depicted in figure 1F of PANDIT, is, however, but one example of PANDIT's teachings with respect to the entry of data. Texts including, for example, email addresses, nouns, verbs, names, and street addresses can be recognized. In other words, PANDIT expressly discloses that you can use a name in the add to address book function. And so even if this court says, well, it wouldn't be common sense to go search for a telephone number because major law firms, major businesses all have the same telephone number for multiple different people, there would be a reason to do that with respect to a name. So you would first search to see if the name already exists in the address book. And if the name exists in the address book, it would display what name, what information comes up. Didn't the board find that you'd have to modify PANDIT in order to get to the name? In other words, they were using common sense to modify PANDIT. They didn't find that PANDIT actually disclosed this exact search. Yes, Your Honor, but this is obviousness. It's not anticipation. This is single reference obviousness. So there is going to be some sort of gap between what's disclosed in the prior art and what the alleged invention claims. And the issue here is just whether a person of ordinary skill in the art would have seen a reason to modify PANDIT. I mean, the normal obviousness analysis, the bulk of the obviousness analyses that we see, are everything's disclosed somewhere in the prior art. The only question is would someone put them together. Where you have prior art and there is a limitation that is completely absent, that is a much more difficult analysis. And just using common sense to find an absent limitation is something that this court has cautioned against. So I would disagree with that in several respects, Your Honor. The first is we're not using common sense here to sort of create a limitation. We're using common knowledge. We're using information that is in Dr. Levy's declaration, which the board found, where he can see that some databases search for duplicates by default. Dr. Menechet's declaration, where he explains that searching in databases was well known. And in fact, PANDIT itself discloses searching. I think that if we look at A149 of PANDIT, at column one, there's a description of the related art. And at line 10 in column one, it says, one example of word recognition is the searching of large volumes of text, such as encyclopedias or legal casebooks, using keywords or search terms. So searching itself is disclosed in PANDIT. And so the only issue here is whether or not there would have been a motivation to combine. And under this court's precedence, you can use common sense. No, searching for a particular word is disclosed in PANDIT. The searching that's occurring in the claim is searching for a word in order to retrieve different information that is attached to that word. So that's not what's disclosed in PANDIT. And you're not arguing that's what's disclosed in PANDIT, are you? Because I didn't read your argument. That is disclosed in PANDIT. If we go to A150. You agree column one, line 10 or 11, you just pointed me to, doesn't disclose that. That discloses that searching of databases was well known. No, it discloses searching for a word, a particular word, using a keyword as a search term and searching in a large database for that word, not searching by word for a different piece of information. So in the next sentence it says a user. Am I right or wrong about what that discloses? It does say it's searching for a term, which is the same thing that the invention does. The invention searches for a term in order to extract information that is associated with that term. Once it finds the term that it's searching for, then it extracts the associated information. So maybe I should phrase my question differently. Does PANDUIT describe somewhere in it extracting information associated with a search term? Yes, Your Honor. At A150 at column three, line 11, where the invention is capable of recognizing nouns or verbs, pull down, sorry, A150 column three, line 10, where the invention is capable of recognizing nouns or verbs, pull down menus can, for example, identify executable programs which provide the meaning of the highlighted word. So that is taking the word, it's searching for it in an external information source. Once it finds it, it brings up the meaning of the highlighted word, such as the definition in the dictionary. So, again, I'd say that's just simple database searching, but that right there is PANDUIT explaining how it works. And that's substantial evidence that supports the board's decision with respect to what was known to a person of ordinary skill at the art at the time of the invention. Now, I just would like to just make an additional point on the here where case and some of the law that was discussed here with respect to common sense and common knowledge. It's very clear under this court's precedent that common knowledge is distinguishable from common sense, that you just need some sort of record support for it. And in the here where case, this court held that there was absolutely no record support for the background knowledge in the art. But, in fact, in here where this court said that an affidavit or a declaration by the examiner could have provided what was known to a person of ordinary skill in the art. And that's what we have here. We have declarations from Dr. Levy and Dr. Menashe, which provide evidence that there was this common knowledge of database searching. This is just simple database searching where you take information, you search and see if it's in the database, and then you pull back associated information. Now, in the board's decision to institute at A489, didn't they expressly reject the site you just gave me that you just said is substantial evidence for the board's decision? Didn't they expressly reject it and actually say Apple did not rely on Panduit 311-15 in its petition to institute and therefore it would not rely upon it or consider it? So are you now telling me to use as substantial evidence for the decision a passage in the reference that the board expressly refused to consider because they said you waived it? Your Honor, I don't think that that's actually what the board said in its institution decision. The board instituted on obviousness over Panduit. And so it didn't actually say it was an obviousness challenge based upon just one example. And what the board said in its institution decision was that it didn't find at that time enough argument or evidence to look at the noun and verb, but it didn't reject it. It simply said it found enough in Panduit's disclosure of the add-to-address book example. And as this court has held in the Genzyme decision from a few weeks ago in Arioso, that any evidence in the record here is substantial evidence. There's nothing in the institution decision which says we could not rely upon that evidence in this prior reference in this case. Did the board rely on it? Well, the board did not specifically cite this part, but it did in the passages I previously read. At A11, it did refer to the fact that Panduit could identify text which included nouns, verbs, names, street addresses. So the board recognized that Panduit's disclosure went to things like nouns and verbs, where the noun and verb recognition would be things like taking the noun and finding the definition of the noun. And again, that's all substantial. The board didn't make that second step, did it? Well, Your Honor, it didn't need to because it relied upon the common knowledge of database searching. And under the substantial evidence standard, any evidence that supports that finding is enough. If there are no further questions, we would ask that the board's decision be affirmed. Mr. Asher, you have rebuttal time left. Thank you, Your Honor. Why don't you start with that last point? The last point that says that Panduit allows an analysis of a second set of information or retrieval of a second set of information to help define the first set of information. Panduit has a second set of information? I'm sorry. Yeah, the text at column three, lines 11 to 15. The invention is capable of recognizing nouns and verbs. Yes, absolutely. As Judge Moore recognized, the board excluded the noun-verb proposal in Panduit as part of the IPR trial. So it was not one of the grounds that we dealt with. The claim is much more than searching. It requires recognizing first information and using that first information in a specific way. There's a search that is performed using the first information to obtain second information of a specific type. The type of the second information is dependent on the type of the first information. And there's performing an action in which the action that's performed is of a type that is dependent on the type of the first information. So the whole claim has to be satisfied, and they've only tried to do that with respect to the telephone number embodiment. And so that was the only thing that was at play in the case. But what's your response to the argument that if we're doing a substantial evidence review, as long as the evidence was in the record, we should refer to it? Well, in order to find evidence of the complete claim, you need to find an incentive to make the combination of Panduit and other common knowledge that's not disclosed in Panduit. The step, step I, in the claim requires at least three recited features. It requires a search using the first information. It requires a search of an external information source. It requires finding second information, having a type that's dependent on the type of the first information. So to just pull one sentence out saying that names can be recognized or nouns, verbs can be recognized is not sufficient. And if that were a part of the trial, we could have had a deposition. We could have gone through whether Panduit is even enabling by means of that first sentence when it mentions names or it mentions nouns, verbs. Does it enable one to recognize names? The 843 patent has a whole paragraph explaining how one recognizes the different types of information. So there are a lot of things that could have gone on had they been in the trial, but this trial and the decision were all directed to the telephone number embodiment in Panduit. Do you have anything further? Nothing further. Okay, I thank both counsel for their argument. Very helpful.